SOUTHERN RY. CO. v. SMITH.

(Circuit Court of Appeals, Sixth Circuit. May 6, 1913.)

No. 2,316.

1. MASTER AND SERVANT (§ 137*)—RAILROAD AND SWITCHMAN—CONCURRENT DUTIES OF CARE TO PREVENT INJURY.

While it is primarily the duty of a switchman in railroad yards to be on the lookout and keep out of the way of moving engines, there is a concurrent or secondary duty, independent of statute or rule, on the part of those in charge of such moving engines to keep such lookout as is reasonably necessary to avoid injury to an employé who may neglect to protect himself, and the extent of such duty is measured by the peculiar circumstances of the case.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 273, 274, 277, 278; Dec. Dig. § 137.*]

2. MASTER AND SERVANT (§ 278*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—SWITCHMAN IN RAILROAD YARDS.

While plaintiff's intestate, who was a switchman in defendant's railroad yards, was walking along a track in the yards at night, he was overtaken and killed by an engine which was "drifting" or moving slowly behind him on the track, making very little noise. Its headlight was dim, and rendered more so by the electric yard lights, and there was a train passing on an adjoining track which covered what noise the engine made. It could have been stopped within 10 feet, but the engineer did not see deceased. Held, that the facts tended to show that the engineer was negligent, and his negligence had a causal relation to the injury, and that a verdict for plaintiff was supported by the evidence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956-958, 960-969, 971, 972, 977; Dec. Dig. § 278.*]

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action at law by Malinda Smith, administratrix of the estate of J. P. Smith, deceased, against the Southern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Jourolmon, Welcker & Smith, of Knoxville, Tenn., for plaintiff in error.

Pickle, Turner & Kennerly, of Knoxville, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. This was an action for damages, brought under the federal Employer's Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]) on account of the killing of a switch tender, J. P. Smith, by a switch engine in the railway yards. It presents as controlling the question whether there was any evidence fairly tending to show a lack of due care on the part of the engineer in not observing Smith upon the track in time to avoid the accident; or whether, on the other hand, the evidence permits only the conclusion that Smith stepped upon the track so

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

closely in front of the coming engine that absence of due care by the engineer may not be inferred.

We cannot give space to a discussion of the evidence. Plaintiff's proof is not far beyond the margin line of insufficiency; but, taking into account the ordinary probabilities of human conduct, along with the evidence of the witnesses and permissible computations of speed and distance, there was legal support for the theory that Smith stepped upon the track 80 or 100 feet ahead of the engine, and walked along the track with his back to the engine while it was covering 150 feet at a very slow speed. Accepting the engineer's testimony that he did not see Smith or know of the injury till later, it would follow that the engineer was not looking; and, as he could have stopped his engine in 10 feet or given a probably effective warning, the failure to look would bear causal relation to the injury. Clearly, this situation would tend to show negligence, unless the Railway Company is right in its contention, founded on Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758, that defendant owed to a switch tender, walking on the track, no duty to take any care to avoid running him down.

[1] We cannot say that there was no duty whatever to keep a lookout for Smith. Doubtless, it was primarily Smith's duty to keep out of the way, but this did not absolve the engine crew from all obligation. The care required and the duty imposed with reference to the yard employés seen upon the tracks are much less in degree than with reference to strangers; but defendant's theory of no duty would extend to a case where an employé was obviously helpless on the track and might have been seen for some time from the coming engine. It would permit the engine crew to run through the yard with their eyes shut, and it is too broad. Under such facts as here exist, there must be a concurrent or secondary duty, independent of statute or rule, to keep such lookout as is reasonably necessary to avoid injury to the employé who may neglect his primary duty to protect himself. McMarshall v. Railway, 80 Iowa, 757, 761, 45 N. W. 1065, 20 Am. St. Rep. 445; Schlereth v. Railway, 115 Mo. 87, 21 S. W. 1110; Railroad v. Craft (C. C. A. 9) 69 Fed. 124, 128, 16 C. C. A. 175.

[2] Such concurrent duty is, in the present case, emphasized by the surrounding conditions. The engine was "drifting," and so was coming in comparative silence; it had an oil headlight, dimmed by surrounding electric yard lights; a freight train was passing on the adjacent track covering up whatever noise the switch engine did make; and, as there was a row of electric lights along the track on which the engine was coming, one or more of them, with such blinding or confusing effect as it might have, would be between the engine and any one upon the track a little distance ahead. These unusual conditions tend to increase or make active this duty which we have called secondary, and which, under other conditions, might remain wholly latent.

There remains only the question whether the engineer, if he had seen Smith walking along the track, would have been justified in sup-

posing, until too late to avoid the injury, that Smith would step one side out of danger; and this brings us directly to the Aerkfetz Case. That decision should be distinguished from the present case, for at least three reasons: (1) It did not involve the negligence of the train crew as fellow servants of Aerkfetz, but the nondelegable duty of the master to provide a safe place to work, and it must be read with due regard to the point involved; (2) it did not deny the ordinary duty to look out ahead by the engineer, but the extraordinary duty to send an extra man ahead of the moving cars which the engine pushed; (3) Aerkfetz was working on the track. His duty required him to remain there as long as consistent with safety, and so the fact that he continued to work would not be at all significant of lack of knowledge by him that the cars were approaching. Smith was not at work upon the track, there was nothing except his convenience to keep him there, and his apparently unheeding presence, if continued until the engine came within 50 or 25 feet of him, would be strongly significant that he did not know it was coming.

We think the District Judge was right in holding that the Aerkfetz Case did not control; and the judgment must be affirmed, with costs.

Under the rule declared by the Supreme Court in Railway v. McGinnis, 228 U. S. 173, 33 Sup. Ct. 426, 57 L. Ed. ——, April 7, 1913, it would seem that the verdict and judgment below were erroneous in not apportioning the recovery among the beneficiaries, so as to determine how much belonged to the widow and how much to the children; but this point was not raised in the court below nor in this court, and the error is not so clearly prejudicial as to require notice on our own initiative under rule 11.